**In re Janet Compis OATES, Relator.**

No. 08–02–00330–CV.

Court of Appeals of Texas,
El Paso.

Jan. 16, 2003.

Brad M. LaMorgese, Cooper & Scully, Carmen Elaine Eiker, Holmes Woods & Diggs, Dallas, for Relator.

Melissa Hirsch, Odessa, for Respondent.

Before Panel No. 5 McCLURE, CHEW, JJ., and PRESLAR, C.J. (Ret.).

## OPINION

ANN CRAWFORD McCLURE, Justice.

In this original proceeding, Janet Oates seeks mandamus relief following the trial court's refusal to dismiss a suit for grandparent access filed by her late husband's parents, C.W. and Elva Gay Oates. Janet first contends that the Texas grandparent access statute is facially unconstitutional in the wake of *Troxel v. Granville*.[1] Alternatively, she argues that under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Texas lacks subject matter jurisdiction. Because we do not reach constitutional issues unless absolutely required to do so to resolve the appeal,[2] we will address only the second point. For the reasons that follow, we grant relief.

---

**1.** 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

**2.** *San Antonio General Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957).

## FACTUAL SUMMARY

Janet and Sammy Oates met and married in Odessa, Texas. The couple separated in June 2000, and filed for divorce in Ector County the next month. Temporary orders were entered appointing the parents as joint temporary managing conservators of their three children, with Sammy having primary possession. While the divorce was still pending, Janet moved to New York City while the children remained in Odessa with their father. Sammy passed away on January 19, 2001. At the time of his death, the divorce had not been finalized. Rather than uproot the children immediately, Janet decided it was in their best interest to remain in Texas with both sets of their grandparents until a suitable residence in New York City could be found. She was unable to locate a larger apartment until March 1. The children were enrolled in school on March 20 and they moved to New York permanently in mid-April.[3]

During the parties' separation, Sammy had attempted to change the beneficiary of his life insurance policy from Janet to his father. However, the insurance company ultimately determined that Janet was the rightful beneficiary. The Oateses filed suit in early August claiming entitlement to the benefits. Three weeks later—on August 30, 2001—the Oateses filed suit for grandparent access.

Since the initiation of litigation, the Oateses have not been allowed to visit with the grandchildren or talk with them on the telephone. They have offered to pay all expenses so that the grandchildren can visit them in Odessa and they have offered

---

**3.** The parties dispute whether the move actually occurred on April 15 or April 18, but the time differential is of no significance here.

to travel to New York to visit. The only communication the Oateses have had with their grandchildren is by exchanging letters and packages in the mail.

### STANDARD OF REVIEW

Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). An appellate court rarely interferes with a trial court's exercise of discretion. A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is made without reference to guiding principles of law or, stated differently, is arbitrary and unreasonable. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A trial court has no discretion in determining what the law is or in applying the law to the facts. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840. A writ of mandamus is an appropriate means to require a trial court to vacate a void order arising out of an erroneous assertion of jurisdiction under the UCCJEA. *Geary v. Peavy*, 878 S.W.2d 602, 604–05 (Tex. 1994) (mandamus appropriate remedy to challenge jurisdiction under former UCCJA); *In re Calderon–Garza*, 81 S.W.3d 899, 902 (Tex.App.—El Paso 2002, orig. proceeding) (mandamus appropriate remedy to challenge jurisdiction under UCCJEA). Subject matter jurisdiction is a question of law which we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639–40 (Tex.1986) (orig. proceeding). However, in jurisdictional disputes arising from child custody proceedings, the relator need not demonstrate the inadequacy of an appellate remedy. *In re Calderon–Garza*, 81 S.W.3d at 902; *In re Lambert*, 993 S.W.2d 123, 127 (Tex.App.—San Antonio 1999, orig. proceeding); *In re Jeffries*, 979 S.W.2d 429, 433 (Tex.App.—Waco 1998, orig. proceeding).

### PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *See, e.g., State v. Benavides*, 772 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1989, writ denied). The petitioner has the burden to allege facts that affirmatively show the trial court has subject matter jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A respondent may assert in the plea that another court has exclusive jurisdiction or that the petitioner has made fraudulent allegations for the purpose of conferring jurisdiction. *In re Brilliant*, 86 S.W.3d 680 (Tex.App.—El Paso 2002, no pet.); *see* Michol O'Connor, O'CONNOR'S

TEXAS RULES & CIVIL TRIALS 2002, *Commentaries* 175, 176–77 (2002). In deciding whether to grant or deny a plea to the jurisdiction, the court need not look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Independent School District v. Blue,* 34 S.W.3d 547, 555 (Tex.2000).

## UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT

■ Jurisdiction here is predicated upon the UCCJEA which Texas adopted effective September 1, 1999. The Act was designated to address the "inconsistency of interpretation of the [former] UCCJA and the technicalities of applying the PKPA." *McGuire v. McGuire,* 18 S.W.3d 801, 806 (Tex.App.—El Paso 2000, no pet.), *citing* Sampson & Tindall, TEX. FAM.CODE ANN. §§ 152.001, *Introductory Comment,* p. 410 (1999).

### *Statutory Construction*

■ When construing a statute, we must consider the statute as a whole rather than its isolated provisions. *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *In re Calderon–Garza,* 81 S.W.3d at 902. One provision should not be given meaning out of harmony or inconsistent with other provisions. *Id.* The well-established rules of statutory construction require us to presume that the entire statute is intended to be effective. *See* TEX.GOV'T CODE ANN. § 311.021(2) (Vernon 1998).

### *Initial Custody Determination or Modification?*

■ Under the UCCJEA, temporary orders may qualify as a child custody determination regardless of whether the divorce was finalized and the decree signed. Section 152.102(3) provides:

'Child custody determination' means a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child. The term includes permanent, temporary, initial, and modification orders. The term does not include an order relating to child support or another monetary obligation of an individual.

TEX.FAM.CODE ANN. § 152.102(3) (Vernon 2002). Here, the court originally designated Sammy and Janet as joint temporary managing conservators of their three children, with Sammy having primary possession. In the absence of specific provisions to the contrary in an order establishing conservatorship, the death of a parent managing conservator terminates the conservatorship order. *See Greene v. Schuble,* 654 S.W.2d 436, 437–38 (Tex.1983). Because no orders have been issued by a New York court, we must approach the jurisdictional issue in the context of an initial custody determination.

### *Analysis of Home State Status*

■ Since the Act prioritizes home state jurisdiction, we must conduct this analysis first. Sampson & Tindall, TEX. FAM.CODE ANN. §§ 152.001, *Commissioners' Official Prefatory Note to UCCJEA,* p. 464 (2001). Under the clear language of the Texas UCCJEA, the date for determining whether Texas has jurisdiction is the date of commencement of the proceeding in Texas. *In re McCoy,* 52 S.W.3d 297, 305 (Tex.App.—Corpus Christi 2001, pet. denied). "Commencement" is defined as "the filing of the first pleading in a proceeding." TEX. FAM.CODE ANN. § 152.102(5). The grandparents filed suit in Texas on August 30, 2001. That date determines whether the UCCJEA confers jurisdiction on a Texas court.

■ We must next address the interplay between Section 152.201(a) and Section 152.102(7). Section 152.201(a) provides that a Texas court has jurisdiction to make an initial child custody determination only if Texas "is the home state of the child *on the date of the commencement of the proceeding...*." [Emphasis added]. "Home state" as used in this statute is defined in Section 152.102(7) as:

> [T]he state in which a child lived with a parent or a person acting as a parent *for at least six consecutive months immediately before the commencement* of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent. A period of temporary absence of a parent or a person acting as a parent is part of the period. [Emphasis added].

Tex. Fam.Code Ann. § 152.102(7). The date of the commencement of the child custody proceeding is used as a point of reference from which to determine the child's home state according to the specific definition provided in Section 152.102(7). *In re Calderon–Garza*, 81 S.W.3d at 902. And the specific definition of "home state" requires us to determine where the child lived immediately before the commencement of the proceeding. *Id.* Under Section 152.102(7), Texas would only have jurisdiction if the children had lived here with a parent or a person acting as a parent for at least six months immediately before suit was filed. Sammy died more than six months before suit was instituted. Consequently, his residence with the children will not suffice to confer home state jurisdiction. The children lived with their grandparents from January 19, 2001 until mid-April 2001, or roughly three months. The Oateses could possibly be viewed as persons "acting as a parent" during that three month period. But the Family Code

defines a "person acting as a parent" as someone who had physical custody of the child for "a period of six consecutive months ... within one year immediately before the commencement of a child custody proceeding." Tex. Fam.Code Ann. § 152.102(13). Since the grandparents never had physical custody for six months, they never achieved the status of "persons acting as a parent." Because the children did not live in Texas with a parent or a person acting as a parent for six consecutive months immediately before the commencement of the suit, Texas does not qualify as the children's home state.

■ We must next determine whether New York had become the children's home state. When suit was filed on August 30, 2001, the children had only been living in New York with their mother for a little over four months. Nevertheless, Janet argues that the six month residency requirement began on the date of Sammy's death rather than on the date the children physically arrived in New York. She directs us to Section 103.001(c) of the Family Code which provides that "[a] child resides in the county where the child's parents reside or the child's parent resides, if only one parent is living...." Tex. Fam.Code Ann. § 103.001(c) (Vernon 2002). Janet contends that the children's residence was established in New York once Sammy died because as the sole surviving parent, her residence was determinative. We disagree. Chapter 103 relates to venue and intrastate transfer when Texas has subject matter jurisdiction. The Family Code does not contemplate interstate transfers. *Coots v. Leonard*, 959 S.W.2d 299, 307 (Tex.App.—El Paso 1997, no pet.). We conclude that New York did not have home state jurisdiction either. Since the children had no home state at the time suit was filed and Texas was not the children's home state for six consecu-

tive months immediately before suit was filed, we must turn to the issue of significant connection.

### Significant Connection Jurisdiction

 Significant connection jurisdiction should be employed only when Texas is not the home state and it appears that no other state could assert home state jurisdiction. *Lemley v. Miller*, 932 S.W.2d 284, 286 (Tex.App.—Austin 1996, no pet.). The applicable statute provides:

> [A] court of this state has jurisdiction to make an initial child custody determination only if:
>
> (2) a court of another state does not have jurisdiction under Subdivision (1) ... and:
>
>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>>
>> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

TEX. FAM.CODE ANN. § 152.201(2)(A)(B).

 The grandparents claim that since the children lived in Texas from birth through April 2001, Texas has the most significant connection with the children. While their argument is both logical and reasonable, it is statutorily prohibited. Since we have established that the Oateses did not attain the status of "persons acting as a parent" as that phrase is defined, Texas cannot invoke significant connection jurisdiction. TEX. FAM.CODE ANN. § 152.201(a)(2)(A). While the children may well have a significant connection to the state of Texas, the statute requires more. There must also be a parent or a person acting as a parent with a significant connection to the state. The Oateses do not meet either criteria. There being no basis on which Texas may assert jurisdiction, we need not address the issue of *forum non conveniens*.

We sustain Issue Two and conditionally grant relief. The writ of mandamus will issue only if the trial court does not dismiss the suit for want of jurisdiction.

PRESLAR, C.J. (Ret.), sitting by assignment.